On Application For Rehearing
This Court's opinion of April 15, 1994, is withdrawn and the following is substituted therefor.
As part of a plea bargain, James Lavon Bennett pleaded guilty to two counts of robbery in the second degree and one count of escape in the second degree. The trial judge determined that the enhancement provisions of the Habitual Felony Offender Act applied to Bennett's sentences. He was sentenced to two terms of life imprisonment on the robbery charges and to a term of 15 years' imprisonment on the escape charge. The three sentences were to run consecutively. Bennett appealed, and the Court of Criminal Appeals reversed all three of these convictions on the authority of Ex parte Rivers, 597 So.2d 1308 (Ala. 1991).
This Court recently reiterated the holding of Rivers inGordon v. Nagle, docket no. 1921941, March 25, 1994,* by pointing out that the failure to inform a criminal defendant of the minimum and maximum sentencing possibilities constitutes a defect in the guilty plea that goes to the voluntariness of the plea and subjects it to a collateral challenge under Boykin v.Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).[1]Rivers does not stand for the proposition that any defect in the entry of a plea of guilty always goes to the jurisdiction of the court to accept the plea. Nagle, 647 So.2d at 93.
This Court also held in Nagle that a criminal defendant can raise a Boykin challenge in a post-conviction proceeding, even if the issue was not raised at the trial, so long as it is raised within the prescribed time limits. Gordon v. Nagle,647 So.2d 91; see also Cantu v. State, [Ms. 1920426, April 15, 1994] 1994 WL 129749 (Ala. 1994) (on application for rehearing). Both Nagle and Cantu involved appeals from rulings on petitions filed pursuant to Rule 32, Ala.R.Crim.P. Bennett argues that his guilty pleas were involuntarily entered (because, he says, he was not properly informed of the correct range of punishment) and that his convictions must, therefore, be set aside. Nonetheless, the State argues that because Bennett appealed directly to the Court of Criminal Appeals, instead of first filing a Rule 32 petition in the trial court, his challenge is procedurally barred because, the State says, it was not raised at the trial level. We disagree with the State's contention that this issue is procedurally barred, because Bennett filed a post-conviction motion for a corrected sentence in the trial court.
This Court recently addressed these issues in a case involving a direct appeal to the Court of Criminal appeals from a judgment of conviction. In Parish v. State, [Ms. 1921181, April 15, 1994] 1994 WL 128995 (Ala. 1994), the defendant, Kelvin Parish, contended that his guilty plea had not been voluntarily and intelligently made. Parish's argument — that a challenge to a guilty plea based on alleged misinformation as to the minimum and maximum sentencing possibilities may be raised for the first time on direct appeal to the Court of Criminal Appeals — was originally rejected by the Court of Criminal Appeals. However, on application for rehearing, the Court of Criminal Appeals withdrew its original opinion and substituted another one, holding that Parish's sentence was void, on the authority of Ex parte Rivers. That holding was based on the premise that Rivers stood for the proposition that a complete explanation of the minimum and maximum sentencing possibilities was an absolute constitutional prerequisite to the acceptance of a guilty plea. On April 15, 1994, we reversed the judgment of the Court of Criminal Appeals voiding Parish's sentence and remanded Parish for proceedings consistent with our opinion.
The State also contends that Bennett was advised of the full range of sentencing possibilities; therefore, contrary to Bennett's *Page 216 
claims in this certiorari proceeding, the State says there was never a defect involving his guilty plea in the first place. The record clearly indicates that Bennett was informed that he faced the possibility of life imprisonment without parole if he did not accept the plea arrangement. There was some confusion at the sentencing hearing when the trial judge initially failed to take into account the fact that Bennett was a habitual offender. When the confusion was made apparent, the attorneys for both sides interrupted immediately. The trial judge then corrected himself and explained to Bennett the correct range of sentencing possibilities that Bennett faced on the robbery charges. Regarding the escape charge, the Court of Criminal Appeals stated that the trial judge had failed to advise Bennett of the range of punishment that could be imposed upon conviction. The record indicates that the trial judge did advise him of the full range of punishment.
The record indicates that Bennett filed a "motion to enter a guilty plea" on the robbery charges and another "motion to enter a guilty plea" on the escape charge. The contents of these motions filed by Bennett's attorney indicated that Bennett understood that under the plea bargain the range of punishment upon conviction would be from 15 years to life imprisonment as a habitual offender on the robbery charges and 15 years to life imprisonment on the escape charge. After being sentenced, Bennett filed a pro se post-conviction motion for his sentence to be corrected in accordance with the plea agreement. He alleged that he had been advised that his sentences would run concurrently, not consecutively, and, therefore, he argued that his plea was not voluntary. Although an explanation as to whether the sentences will run consecutively or concurrently is not a part of theBoykin colloquy, we nonetheless point out that the testimony at the sentencing hearing indicates that the judge asked if Bennett's sentences were to run consecutively. The prosecutor answered affirmatively, and there was no objection from Bennett.
The record clearly indicates that Bennett's guilty plea was voluntarily and intelligently made, despite the trial court's misstatement (which was immediately corrected) during its explanation to Bennett of the range of sentencing possibilities; therefore, the judgment of the Court of Criminal Appeals is reversed, on the authority of Nagle and Cantu, and a judgment is rendered reinstating Bennett's convictions.
OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; REVERSED AND JUDGMENT RENDERED.
ALMON, SHORES, STEAGALL, KENNEDY and COOK, JJ., concur.
* Note from the reporter of decisions: On September 30, 1994, the Alabama Supreme Court withdrew its March 25 opinion inGordon v. Nagle and substituted another one. See 647 So.2d 91
(Ala. 1994).
[1] Boykin set out the procedural due process requirements that must be met before a guilty plea can be considered to have been voluntarily and intelligently made.